UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRET S. BEILER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:12 CV 2 |
| | ) |
| DUNKIRK POLICE DEPARTMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Bret S. Beiler, a *pro se* plaintiff, is proceeding on a claim that officers from the Dunkirk Police Department used excessive force against him in violation of the Fourth Amendment. The two remaining defendants—Captain Michael E. Kreps and Officer Brad Miller—move for summary judgment. (DE 50.) For the reasons stated below, the motion will be granted.

**I.      Legal Standards**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists,

the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Beiler did not file a response to the motion for summary judgment, despite being given proper notice of the motion. (*See* DE 49.) Pursuant to N.D. IND. LOCAL RULE 7-1(d)(4), a party's failure to file a response within the time prescribed may subject the motion to summary ruling. Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.* The court still must "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

## II. Undisputed Facts

The following facts are undisputed. On April 17, 2010, at approximately 1:00 a.m, Captain Kreps and Officer Miller were on patrol in full uniform driving an unmarked

police vehicle. (Defs.' Facts at 3.) As they approached the intersection of Lincoln Avenue and Angle Street, they observed a car parked in a mobile home parking lot with its passenger door open.[1] (*Id.*) They could see a leg sticking out of the vehicle on the passenger side. (*Id.*) They pulled over and exited their car to investigate. (*Id.*)

When the officers reached the car, they saw a man later identified as Beiler. (*Id.*) He was slumped over, and they could not determine if he was asleep, awake, or perhaps injured. (*Id.*) Captain Kreps shook Beiler, and when Beiler woke up he asked to see his identification. (*Id.*) They could smell the odor of alcohol, and noticed he had bloodshot eyes and his speech was slurred. (*Id.* at 4.) The officers also saw that his belt was unbuckled and his pants unzipped, and they noticed a wet spot on the ground outside the vehicle which smelled like urine. (*Id.*) Captain Kreps asked Beiler why he was in the car, and he responded that his roommate "had locked him out because he was drunk." (*Id.*) Captain Kreps was concerned about Beiler's medical condition and wanted to assess his intoxication level, so he asked Beiler to step out of the car. (*Id.*) Beiler refused. (*Id.*) The officer told him they wanted to check and make sure he was alright, and if so he could go home. (*Id.*) Beiler began yelling profanities at the officers and refused to exit the car. (*Id.* at 68.) At that point, Captain Kreps reached into the car, grabbed a hold of Beiler's arm, and attempted to pull him out. (*Id.*) Beiler tried to shut

---

[1] The car was parked in a common area in front of three mobile homes. (Defs.' Facts at 3.) The parking lot was open to anyone visiting the area. (*Id.*)

the door on Captain Kreps' hand, grabbed onto the center console so he could not be pulled out of the car, and continued yelling profanities. (*Id.*)

Captain Kreps then took out his taser, warning Beiler that if he did not exit the car he would be tased. (*Id.*) Beiler still refused, so Captain Kreps stunned him with the taser. (*Id.*) Beiler still refused to comply, and continued to push on the door with his foot so the officers could not remove him from the car. (*Id.*) Captain Kreps applied his taser a second time, and the officers were then able to remove Beiler from the car. (*Id.*) Once out of the car, Beiler continued to struggle, kick, and yell profanities at the officers. (*Id.*) They were eventually able to restrain him, and they placed him under arrest. (*Id.*) He was later charged with public intoxication and resisting law enforcement. (*Id.*) A jury found him guilty as charged, and his conviction was affirmed by the Indiana Court of Appeals. *Beiler v. State of Indiana*, No. 38A02-1109-CR-839 (Ind. Ct. App. May 24, 2012).

## III. Analysis

### A. Res Judicata

The defendants first argue that Beiler's Fourth Amendment claim is barred by *res judicata*, because the issue of whether the officers acted reasonably was already litigated in the criminal case. (DE 51 at 5.) "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction. . . cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Ross v. Bd. of Educ. of Tp. H.S. Dist. 211*, 486 F.3d 279, 282 (7th Cir. 2008)

(internal citation and quotation marks omitted). These companion doctrines "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Because the prior case was litigated in state court, the court must look to Indiana law to determine whether the present action is barred. *See* 28 U.S.C. § 1738; *Marrese v. American Academy of Orthopaedic,* 470 U.S. 373, 380 (1985). Under Indiana law, four requirements must be satisfied for a claim to be precluded under the doctrine of *res judicata*: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *MicroVote General Corp. v. Indiana Election Com'n,* 924 N.E.2d 184, 191 (Ind. Ct. App. 2010). A subset of *res judicata*, issue preclusion, bars the subsequent relitigation of a fact or issue that was necessarily adjudicated in the prior lawsuit. *Miller Brewing Co. v. Ind. Dep't of State Rev.*, 903 N.E.2d 64, 68 (Ind. 2009). The primary consideration in deciding whether the doctrine applies is whether the party who would be precluded had a full and fair opportunity to litigate the issue. *Id.*

As pertains to this case, Beiler was found guilty of resisting law enforcement. The issues of excessive force and resisting arrest are not necessarily coexistensive; in other words, a finding that a defendant resisted arrest does not always require a

5

determination of whether the arresting officer used excessive force. *See Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. 2008). Here, however, Beiler expressly raised the issue of whether the officers used excessive force against him, which in his view gave him the right to resist. *See Beiler*, No. 38A02-1109-CR-839, slip op. at 12. The Indiana Court of Appeals rejected his argument, concluding that the officers' actions were entirely reasonable under the circumstances. *Id.* at 14-17. There is no dispute that the state court had jurisdiction to decide this issue, Beiler was a party to the prior case and had a full and fair opportunity to litigate this issue, and it is clear that a final judgment was entered against him. Under these circumstances, the court agrees that Beiler's excessive force claim is barred by *res judicata*.

**B.     Excessive Force**

The defendants alternatively argue that, even if Beiler's claim is not barred by *res judicata*, it fails on the merits. (DE 51 at 8.) The court agrees. An officer's right to arrest an individual includes the right to use some degree of physical force, but the Fourth Amendment requires that force to be objectively reasonable in light of the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quotation marks and citations omitted). Factors to consider include the severity of the crime at issue, whether the suspect posed an immediate

6

threat to the safety of the officers or others, and whether he was resisting arrest or attempting to evade arrest by flight. *Id.* The court must employ an objective standard, viewing the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Furthermore, the "calculous of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," will violate the Fourth Amendment. *Id.* at 396.

Here, the undisputed facts show that at the time of this incident, the officers were faced with an individual who was combative, partially undressed, and showing signs of heavy intoxication. The officers wanted him to exit the vehicle so they could determine whether he was in need of assistance. However, he refused their verbal commands, cursed at them, and actively resisted their efforts to physically remove him from the car. The officers warned him that he would be tased if he did not exit the vehicle, but he still refused to comply, and instead yelled profanities at them. After being tased the first time, he still refused to exit the car, and so he was tased again. After he was removed from the car, he continued to struggle, kick, and evade the officers' attempts to restrain him. Based on these undisputed facts, the defendants' use of force was reasonable under the circumstances. *See Clarett v. Roberts*, 657 F.3d 664, 674-75 (7th Cir. 2011) (affirming jury verdict for officer who tased suspect three times, where suspect

disobeyed officer's verbal commands and circumstances were such that a physical confrontation could escalate quickly); *United States v. Norris*, 640 F.3d 295, 303 (7th Cir. 2011) (officer reasonably used taser to subdue suspect who failed to accede to police commands and whose actions "suggested an intent to use violence to fend off further police action").

Furthermore, even if the defendants used more force than was necessary under the circumstances, they would be protected by qualified immunity. (*See* DE 51 at 12.) The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity will apply if the official made a mistake of fact, a mistake of law, or a combination of the two. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In essence, qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227-29 (1991).

Assuming the officers made a mistake in tasing Beiler, it was not unreasonable for them to conclude in the heat of the moment that use the taser was necessary. It was late at night, dark, and Beiler was attempting to barricade himself in his car. He was combative, appeared heavily intoxicated, refused to comply with their verbal command, and resisted their efforts to remove him from the car. Under these circumstances, any mistake in using the taser was reasonable. *See Brooks v. City of*

*Aurora*, 653 F.3d 478, 486-87 (7th Cir. 2011) (officer who pepper sprayed plaintiff stopped for minor traffic offense was entitled to qualify immunity where plaintiff failed to accede to officer's authority and arguably posed a threat of flight or resistance); *Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002) (officer was entitled to qualified immunity where he forcibly removed plaintiff from a vehicle, tackled him, and handcuffed him, as plaintiff was combative and appeared drunk, even though plaintiff was actually suffering from complications of diabetes). Accordingly, the defendants are entitled to summary judgment.

IV.    **Conclusion**

For the reasons set forth above, the motion for summary judgment (DE 50) is **GRANTED**, and the clerk is **DIRECTED** to enter judgment in favor of Captain Michael Kreps and Officer Brad Miller.

**SO ORDERED.**

Date: August 7, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT